UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| HELENE A. HOPKINS, | ) | No. 07 B 1134 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

## MEMORANDUM OPINION

This matter is before the court on the objection of Americredit Financial Services to confirmation of the chapter 13 plan proposed by debtor Helene Hopkins. For the reasons that follow, the objection will be overruled, and the plan will be confirmed.

The few relevant facts are set forth in Americredit's objection and are not disputed. Americredit is a creditor in the bankruptcy case whose debt is secured by a lien on a 2000 Toyota Camry. Hopkins bought the Camry within 910 days of the filing of the case, making the car a "910 vehicle" subject to the "hanging paragraph" in section 1325(a) of the Bankruptcy Code. Under her retail installment contract for the Camry, Hopkins was obligated to pay the debt at an interest rate of 20.95% with monthly payments of $383.39. At the time Hopkins filed bankruptcy, she was indebted to Americredit in the amount of $11,897.30. Hopkins received a discharge in a chapter 7 bankruptcy filed on December 20, 2005. That means she will not qualify for a discharge in this case. *See* 11 U.S.C. § 1328(f)(1).

In her most recent proposed plan filed June 12, 2007, Hopkins lists Americredit's secured claim as $11,898 and proposes to pay the claim at an interest rate of 10% by making fixed monthly payments of $252.80. Americredit has objected to Hopkins's plan. In its objection, Americredit insists that it must be paid the contract rate of interest and must receive monthly

payments at the contract rate. Americredit argues that under section 1325(a)(5)(B)(i)(I)(aa), secured creditors in Americredit's position – creditors with debts secured by "910 vehicles" and owed by debtors who do not qualify for a discharge – are entitled to be paid "pursuant to the terms of the contract." (Americredit Obj. at ¶ 11). A recent decision, *In re Williams*, No. 06 B 15945, ___ B.R. ___, 2007 WL 1206738 (Bankr. N.D. Ill. April 23, 2007), supports this view.

The *Williams* decision notwithstanding, Americredit's objection must be overruled. Section 1322(b)(2) of the Code permits a chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The modifications may include "terms such as the amount of the payments on the claim, the timing of the payments and the finance charges." 8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1322.06[1] at 1322-23 (15th ed. rev. 2007); *see Bank One, Chicago, N.A. v. Flowers*, 183 B.R. 509, 516 (N.D. Ill. 1995).

The extent to which a chapter 13 plan can modify a secured claim depends, of course, on section 1325. 8 Alan N. Resnick & Henry J. Sommer, *supra*, ¶ 1322.06[1] at 1322-23; *see also In re Brill*, 350 B.R. 853, 855 (Bankr. E.D. Wis. 2006). Section 1325(a)(5) requires the court to confirm a plan if (A) the holder of each allowed secured claim accepts the plan; (B) the plan provides for the holder to retain its lien and also receive property not less than the allowed amount of the claim; or (C) the debtor surrenders the property securing the claim. 11 U.S.C. § 1325(a)(5). As long as these requirements are met, however, nothing in section 1325(a)(5) prevents a debtor from modifying payment terms or interest rates under section 1322(b)(2).

Arguing otherwise, Americredit invokes section 1325(a)(5)(B)(i)(I)(aa), but that section is no help. Section 1325(a)(5)(B)(i)(I)(aa) spells out lien retention requirements, stating that a

plan must be confirmed if it provides that a creditor with an allowed secured claim will "retain the lien securing such claim" until "the payment of the underlying debt determined under nonbankruptcy law."[1] 11 U.S.C. 1325(a)(5)(B)(i)(I)(aa). The provision addresses how long a secured creditor will "retain the lien securing" the claim and was enacted to resolve a dispute over when a creditor could be compelled to release its lien. In adding the provision, "Congress sided with those courts that have found it impermissible for debtors to require secured creditors to release their liens prior to plan completion and discharge." *Brooks v. General Motors Acceptance Corp. (In re Brooks)*, 340 B.R. 648, 652 n.5 (Bankr. D. Me. 2006). Section 1325(a)(5)(B)(i)(I)(aa) says nothing about payments or interest and does not require particular terms in a plan.

The court did conclude otherwise in *Williams*, holding that when section 1325(a)(5)(B)(i)(I)(aa) applies, it entitles a creditor to the contract interest rate. *Williams*, B.R. at ___, 2007 WL 1206738, at *3. To reach that conclusion, the *Williams* court considered the statutory phrase "payment of underlying debt determined under nonbankrupcy law" and appeared to assume that the debtor's "payment" is what is determined by "nonbankruptcy law." Because "nonbankruptcy law bound [the debtor] to the terms of the contract," the court in *Williams* said, the debtor had to pay the interest at the rate provided in the contract. *Id.* Presumably the same reasoning would apply to other contractual terms, such as monthly payments.

But the interpretation of section 1325(a)(5)(B)(i)(I)(aa) in *Williams* was incorrect. The

---

[1] Section 1325(a)(5)(B)(i)(I)(bb) offers an alternative point until which a plan can provide for a creditor to retain its lien – "until discharge under section 1328." 11 U.S.C. § 1325(a)(5)(B)(i)(I)(bb). But the alternative is irrelevant in this case because Hopkins does not qualify for a discharge.

-3-

phrase "determined under nonbankruptcy law" functions grammatically in that section as a modifying clause. Ordinarily, "clauses that modify nouns . . . attach to the nearest noun preceding them." Glenn Leggett, C. David Mead, & William Charvat, *Prentice-Hall Handbook for Writers* 73 (7th ed. 1978); *see also* John C. Hodges & Mary E. Whitten, *Harbrace College Handbook* 274 (7th ed. 1972) (stating that generally a modifier "should be placed as near the word modified as idiomatic English will permit"); *see, e.g., Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (noting that under "the grammatical 'rule of the last antecedent,'. . .a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows"). The noun preceding the phrase "determined under nonbankruptcy law" is "debt." Therefore, it is the "debt," not the "payment," that nonbankruptcy law determines.

The court in *Williams* also assumed that section 1325(a)(5)(B)(i)(I)(aa) prevents a debtor from modifying the rights of secured creditors. But again, that section says nothing about the rights of secured creditors other than how long those creditors retain their liens. Nor does any other part of section 1325(a) prohibit a debtor from employing section 1322(b)(2) to modify the rights of secured creditors. The sole exception is the "hanging paragraph," and the only modification that provision bars is bifurcation of the claim under section 506. Nothing in section 1325(a) renders section 1322(b)(2) irrelevant when "910 vehicles" are involved. *See In re Trejos*, 352 B.R. 249, 263 n.25 (Bankr. D. Nev. 2006) (noting that the hanging paragraph has no effect on section 1322(b)(2), and "debtors may still stretch out maturity dates, alter payment schedules and propose modified interest rates"); *In re Johnson*, 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006) (stating that "a plan may still modify the term of the loan and the interest rate, even if bifurcation is not allowed").

For purposes of 1325(a)(5)(B)(i)(I)(aa), the "debt determined under nonbankruptcy law"

is whatever amount the debtor owed the creditor under the contract at the time the petition was filed. When the creditor's claim is secured by a lien on a "910 vehicle," the amount of the claim is treated as fully secured, and under 1325(a)(5)(B)(i)(I)(aa) the creditor retains its lien until the claim is paid in full. In this case, then, Hopkins's debt to Americredit is $11,898 (according to Americredit's objection and the plan), and under the hanging paragraph that amount is fully secured. But how Hopkins goes about paying that amount under her plan – the monthly payment, the number of months, and so on – is not dependent on the contract. And neither is the interest rate, which is governed by *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), a point on which nearly all courts agree. *See In re Phillips*, 362 B.R. 284, 306 (Bankr. E.D. Va. 2007) (noting that "the overwhelming majority" of courts apply the *Till* rate to these claims).[2]

For these reasons, Americredit's objection to the confirmation of Hopkins's plan is overruled. A separate order confirming the plan will be entered.

Dated: July 10, 2007

　　　　　　　　　　　　　　　　　　　　　　　　A. Benjamin Goldgar
　　　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge

---

[2] In its objection, Americredit also argues that it should be deemed "a secured creditor for the full amount due to it pursuant to the contract" because Hopkins "on information and belief" has failed to insure the Camry, and because she sent several checks to Americredit that were returned for insufficient funds. The argument is a *non sequitur*. First, Americredit is already secured up to the contract amount by virtue of the hanging paragraph in section 1325(a). The question here is not whether Americredit's claim can be bifurcated – it cannot – but rather how the claim can be paid under the plan. Second, allegations that Hopkins has failed to insure the Camry or make payments to Americredit might support relief from the automatic stay under section 362(d), but they have no bearing on whether her plan should be confirmed.